**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**GARY L. GRINER**
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ANTHONY PEAK, JR., )
)
   Appellant-Defendant, )
)
       vs. )   No. 71A03-1406-CR-224
)
STATE OF INDIANA, )
)
   Appellee-Plaintiff. )

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1402-FB-20

**October 17, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Anthony Peak, Jr., appeals his sentence following his conviction for attempted robbery, as a Class A felony, pursuant to his guilty plea. Peak presents a single restated issue for our review, namely, whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 20, 2014, Peak and a confederate went to Brian Werner's apartment with the intent to rob him. Werner is a tattoo artist, and he knew Peak as a recent customer. After Peak knocked on the apartment door, Werner opened the door just enough to see who was there. Werner recognized Peak and saw another man next to Peak who looked like he was "trying to hide" from view. Appellant's App. at 9. Peak asked Werner if he would give him another tattoo, but Werner told him to come back the following day. Then the man standing next to Peak "jumped in front of the door with a gun in his hand" and shot Werner in the abdomen. Id. Peak and the other man fled. Werner underwent emergency surgery and recovered from the gunshot wound.

The State charged Peak with aggravated battery, as a Class B felony. Two weeks prior to Peak's May 19, 2014 trial date, the State amended the information to charge Peak with attempted robbery, as a Class A felony. At Peak's trial on May 19, after voir dire, the parties advised the trial court that Peak wished to plead guilty to attempted robbery, as a Class A felony, and the State agreed to dismiss the aggravated battery charge. The

2

trial court accepted Peak's guilty plea and, following a hearing, sentenced Peak to thirty years. This appeal ensued.

**DISCUSSION AND DECISION**

Although a trial court may have acted within its lawful discretion in determining a sentence, Article VII, Sections 4 and 6 of the Indiana Constitution "authorize[ ] independent appellate review and revision of a sentence imposed by the trial court." Roush v. State, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007) (alteration original). This appellate authority is implemented through Indiana Appellate Rule 7(B). Id. Revision of a sentence under Appellate Rule 7(B) requires the appellant to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character. See App. R. 7(B); Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate. Gibson v. State, 856 N.E.2d 142, 147 (Ind. Ct. App. 2006). However, "a defendant must persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." Roush, 875 N.E.2d at 812 (alteration original).

The Indiana Supreme Court has also stated that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented. See id. at 1224. The principal role of appellate review is to attempt to "leaven the outliers." Id. at 1225. Whether we regard a sentence as

3

inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." Id. at 1224.

The trial court sentenced Peak to thirty years. The sentencing range for a Class A felony is twenty years to fifty years with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. Peak asks that we revise his thirty-year executed sentence to thirty years with at least ten years suspended to probation.

Peak does not delineate his contentions on appeal as relevant either to the nature of the offense or his character. As the State correctly points out, in considering the nature of the offense "we recognize the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." Brown v. State, 10 N.E.3d 1, 4 (Ind. 2014). Given this presumption and Peak's lack of argument to the contrary, we cannot say that thirty years is inappropriate in light of the nature of the offense.

We interpret each of Peak's contentions on appeal as bearing on his character and address them in that context. Peak maintains that the executed portion of his sentence should be reduced in light of his guilty plea/acceptance of responsibility, the fact that he was an accomplice and not a principal, his youth, his lack of prior felony convictions, and the fact that he would be sufficiently rehabilitated with a partially executed sentence "instead of growing up in a penal institution." Appellant's Br. at 8. But the State points out that Peak did not plead guilty until after his trial had started and, given the victim's identification of Peak as one of the perpetrators, Peak's guilty plea appears to be merely the result of a pragmatic decision based on the strength of the State's case against him.

4

And while Peak did not shoot Werner, Peak used his familiarity with Werner as a tool to try to get Werner to open the door to his apartment. Thus, Peak's role as an accomplice does not render his sentence inappropriate, as he suggests.

With respect to his young age (Peak was twenty at the time of the offense), Peak maintains that his youth and the fact that he was "under the influence of marijuana at the time of the offense" contributed to his "poor decision[-]making." Appellant's Br. at 6. In particular, Peak avers:

> "Scientific and sociological studies tend to confirm a lack of maturity and an underdeveloped sense of responsibility were (i) found in youth more often than in adults; and (ii) more understandable among the young. These qualities often resulted in impetuous and ill-considered actions and decisions." Roper v. Simmons, 543 U.S. 551 (2005). As compared to adults, juveniles have a "lack of maturity and an underdeveloped sense of responsibility"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." Graham v. Florida, 560 U.S. 48, 68 (2010). A partially suspended sentence would have been more appropriate given Peak's youthful age at the time of the offense.

Id. at 6-7.

But in Gross v. State, 769 N.E.2d 1136, 1141 n.4 (Ind. 2002), our supreme court observed as follows:

> It is true that a defendant's youth may be a mitigating factor in some circumstances. See Brown v. State, 720 N.E.2d 1157, 1159 (Ind. 1999) (instructing the trial court to impose concurrent, rather than consecutive, terms on defendant who was sixteen at time of murder and under the influence of a man twice his age); see also Carter v. State, 711 N.E.2d 835, 843 (Ind. 1999) (finding the fourteen-year-old defendant's sixty-year murder sentence manifestly unreasonable). However, age is not a per se mitigating factor. See Sensback v. State, 720 N.E.2d 1160, 1164 (Ind. 1999) ("Unfortunately, murders committed by eighteen-year-olds are more common than they used to be."). As we observed in Ellis v. State, 736 N.E.2d 731, 736 (Ind. 2000), chronological age for people in their teens and early twenties is not the sole measure of culpability. "There are both

5

relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." Id.

Peak has accumulated a significant criminal history, including the following juvenile adjudications for crimes that would have been Class D felonies if committed by an adult: theft (2008); residential entry (2010); and theft (2011). And his criminal history includes the following convictions: resisting law enforcement and invasion of privacy, as Class A misdemeanors (2012); and criminal conversion, as a Class A misdemeanor (2013). While Peak has not been convicted of any felonies as an adult, his criminal history shows a consistent inability to lead a law-abiding life and reflects his poor character. We cannot say that his thirty-year executed sentence is inappropriate in light of the nature of the offense or Peak's character.

Affirmed.

BAILEY, J., and PYLE, J., concur.